SENWALD HOLDING CORPORATION, Respondent, *v.* ROSOFF SUBWAY CONSTRUCTION COMPANY, INC., Appellant, Impleaded with Another.

(Submitted October 22, 1935; decided November 20, 1935.)

*Jacob I. Goodstein* for appellant. The plaintiff failed, as a matter of law, to establish any facts which would vitiate the release. (*Ochs* v. *Woods,* 221 N. Y. 335;

*Ressler* v. *Samphimore Holding Corp.*, 201 App. Div. 344; *Brackett* v. *Griswold,* 112 N. Y. 454; *Arthur* v. *Griswold,* 55 N. Y. 400; *Trowbridge* v. *Oehmsen,* 207 App. Div. 740; 241 N. Y. 564; *Renard* v. *Grenthal,* 81 Misc. Rep. 135; *Adams* v. *Clark,* 239 N. Y. 403; *Crossways Apartments Corp.* v. *Amante,* 213 App. Div. 430; *Benedict Co.* v. *McKeage,* 201 App. Div. 161; *Barbrick* v. *Carrero,* 184 App. Div. 160; *Taylor* v. *Commercial Bank,* 174 N. Y. 181; *Gotteberg* v. *Park Terrace Co.,* 168 App. Div. 800; 222 N. Y. 600.) Plaintiff did not rely upon the representations, nor was it induced thereby to execute the release. (*Brackett* v. *Griswold,* 112 N. Y. 454; *McNamara* v. *Eastman Kodak Co.,* 232 N. Y. 18.) There was no proof of any concealment by the appellant. (*Hogan* v. *Producers' Development Co.,* 200 App. Div. 29.)

*Josiah A. Stover* for respondent. The statements of the defendant-appellant's engineer were not mere expressions of opinion but representations made by an expert in building construction upon which the plaintiff's officers had a right to rely. (*Drake* v. *Grant,* 4 N. Y. Supp. 899; *Indianapolis, Peru & C. Ry. Co.* v. *Tyng,* 63 N. Y. 653; *Simpson* v. *Case Threshing Mach. Co.,* 170 N. Y. Supp. 166; *Morgan* v. *Skiddy,* 62 N. Y. 319; *State ex rel. St. Louis & S. F. R. Co.* v. *Danes,* 290 S. W. Rep. 425; *Conlon* v. *Roemer,* 52 N. J. L. 53.) The plaintiff's officers were ignorant of the fact at the time of the execution of the general release that substantial damage had been done to the plaintiff's building. (*People* v. *Townsend,* 133 Misc. Rep. 843; *Ladd* v. *Chicago & R. I. R. R. Co.,* 155 Pac. Rep. 943; *Parrott* v. *Atchison R. R. Co.,* 207 Pac. Rep. 777; *Madison Trust Co.* v. *Hellekson,* 257 Wis. 691.) It is not material whether the defendant-appellant's engineer knew the representations made by him to the plaintiff's officers to be false. (*Abel* v. *Paterno,* 281 N. Y. Supp. 58; *First Nat. Bank* v. *Level Club,* 241 App. Div. 433; *Brackett* v. *Griswold,* 112 N. Y. 454; *Bennett* v. *Judson,* 21 N. Y. 238; *Brown* v. *Post,* 1 Hun, 303; 62

N. Y. 651; *Baker* v. *Lever*, 67 N. Y. 304; *Delano* v. *Rice*, 23 App. Div. 327; *Dambmann* v. *Schulting*, 75 N. Y. 55; *Hudson Iron Co.* v. *Mershon*, 149 App. Div. 556; *Kirchner* v. *N. H. S. M. Co.*, 135 N. Y. 182; *Albany City Sav. Inst.* v. *Burdick*, 87 N. Y. 39.)

CRANE, Ch. J.   The plaintiff respondent owned a three-story building on the northeast corner of West Broadway and Lispenard street, borough of Manhattan, city of New York.   The defendant appellant in 1927 contracted with the city to construct a subway along Sixth avenue, Church street, West Broadway and other streets, including West Broadway at its intersection of Lispenard street. The subway was built and one of the retaining walls ran near to the plaintiff's site.   Some damage was done to the building, the walls cracked or bulged in places and the building itself encroached upon West Broadway a few inches.   This action has been brought against the contractor to recover this damage which has been fixed by the judgment below in the sum of $1,750.   The defendant's contract with the city provided that the contractor at his own expense will make good any damage that shall in the course of construction be done to any foundations, walls or other parts of adjacent buildings.

The question presented on this appeal is the effect of the general release which the plaintiff gave to the defendant.   The answer of the defendant pleaded this release as a separate and distinct defense, to which the plaintiff replied that it executed the release upon the false and fraudulent representation of the defendant's engineer, that no damage had been done to the premises, and that he failed to state to the plaintiff that the building had moved westerly, becoming an encroachment upon the public highway.   The giving of the general release is conceded.   The false representation which procured it is alleged to be the statement of the engineer that the building or premises had not been damaged, and the failure to disclose to the plaintiff that the building had become

an encroachment in the street. There is no evidence in the record upon which a court is justified in setting aside this release for false representations. The reverse appears by the testimony of the plaintiff and its witnesses. The release was given for a consideration for the settlement of the damage which the plaintiff knew had been caused the building. A brief review of the evidence will show the plaintiff's knowledge and the plaintiff's settlement of all claims against the defendant.

On April 13, 1929, the Board of Transportation of the city of New York wrote to Dr. Bernard Waldman, secretary of the plaintiff, as follows: " Receipt is acknowledged of your letter of March 29th, 1929, enclosing a copy of your letter of December 18th, 1928, addressed to the Rosoff Construction Co. relative to the alleged dangerous condition of premises 1 Lispenard Street and 281 West Broadway."

Extracts from the engineer's report regarding the damage to the building were set forth in the letter. It said in part: " ' On account of the proximity of the subway excavation some protection was necessary, and the Contractor therefore constructed a retaining wall between the buildings and the subway neat line. While this work was in progress there was considerable settlement, varying from a total of 5″ at the corner of Lispenard Street and West Broadway to 1″ at the north lot line of #281 West Broadway. As a result of this settlement there was some cracking of the walls of both buildings, although very much less than usually takes place when a settlement is as great as there was in this case.   *   *   *   As stated above, both buildings are very old and the damages done to them by the subway work is, on account of their originally poor condition, relatively small.' "

It thus appears that two years before the giving of the general release the plaintiff knew that its buildings were damaged. The date of the general release is May 25, 1931, signed by this secretary, Bernard Waldman, and Philip Sencer, president. On the 5th of April, 1930, the

plaintiff, by Waldman, wrote to the Board of Transportation asking when it would be convenient to make a re-examination of the buildings, and on the same day wrote to the Rosoff Subway Construction Company, Inc., agreeing to pay forty dollars for the removal of cellar doors extending from the West Broadway building line. " The cellar area is to be filled in; built up and covered with new sidewalk, to conform with the adjacent sidewalk."

The plaintiff placed the matter in the hands of Attorneys Tolins & Jakobson, who wrote the defendant on July 25, 1930, the following letter: " The owners of premises 1 Lispenard Street, and 281 West Broadway, New York City, have requested us to take up with you their claim for damages to their respective buildings at said addresses, caused by your subway operations.

" If you feel disposed to discuss this matter with us, looking toward an amicable adjustment, we should be pleased to see your representative by appointment with us."

Later a plumber, Frederick Fruiesen, was employed by the plaintiff to do plumbing work in these buildings for which he presented a bill to the owner for $305.85. The plaintiff refused to pay it and the plumber threatened suit. The plaintiff believed that some of the work was due to the subway construction, and the president, Philip Sencer, and Waldman took it up with the defendant. At a meeting in conference then held it was agreed that the plaintiff should pay $125 of this bill and that Rosoff Subway Construction Company, Inc., would pay the balance and have the suit discontinued which Fruiesen had brought.

A letter of July 2, 1931, to the attorney for the defendant, written by Bernard Waldman, shows that the plumber's action was to be defended in accordance with arrangements made with the officials of the Rosoff Construction Company. As a result of these conferences the whole damage to the building was taken up for a consideration for both Sencer and Waldman testified that the

defendant's chief engineer, Stiefel, examined the building with them and was told of the cracks and bulging. Sencer's testimony is as follows:

" I said, ' By the way, Mr. Stiefel, let us go around the corner, and look at the building.' He said, ' There is nothing to that building.' They took me back to Canal Street, and showed me the building across the street. He said, ' Do you see the crack? That crack is in there thirty years, that building will outlive me and outlive you, the same as the crack around your building; there is nothing to worry about. Forget about it.'

" Q. Well, did he say anything to you as to whether or not the building had moved? . A. No."

Dr. Waldman testified that at the conference in reference to the plumber's bill there was a discussion as to the condition of the building: " Mr. Sencer discussed the condition of the building and Mr. Stiefel said everything was O. K., everything had been taken care of, and if at any future date he found there was anything wrong with the building, the Rosoff people were a reputable organization, that they would take care of it."

Thereafter the general release was given, dated May 25, 1931, for which the plaintiff received a check dated May 18, 1931, for $152.93. This check, payable to the Senwald Holding Corporation, passed through the clearing house on the payee's indorsement May 27, 1931. This check had nothing to do with the plumber's bill. The defendant in its testimony says that the figure agreed upon in these conferences for the settlement of all damage was this figure of $152.93 which was paid at the time the release was given and the cancellation of the forty dollar bill which the defendant had against the plaintiff for fixing the cellar doors as per the letter of April 5, 1930, above quoted. Sencer and Waldman failed to explain the receipt of this check. Sencer testifies in reference to the execution of the release that a gentleman brought it to him and that he called up Dr. Waldman and said: " So I told him that this party wants me to sign it, and he will straighten out the plumber's bill. He said, ' Go

ahead and sign it.' * * * I signed it. * * * He (the gentleman) said to me, ' This is a thing we want to get straightened out with everybody downtown here.' I said, 'All right.' The only thing that could be straightened out with everybody downtown was the damage done adjoining buildings by the subway construction."

I have said that this check received by the plaintiff at the time the release was given, of $152.93, had nothing whatever to do with the plumbing bill. It was paid for the release. All through the testimony Sencer and Waldman testify that they agreed that the plaintiff corporation would pay $125 on the plumber's bill and that the defendant would take care of the rest. Of this there is not the least dispute, and their arrangement was carried out. On July 20, 1931, or two months after the giving of the general release and the receipt of the check for $152.93, the plaintiff mailed its check for $125 to the defendant or its attorney in payment of its portion of the plumbing bill, and on the same day wrote a letter to the attorney, signed by Waldman, in which it was stated, " Enclosed you will find check for the sum of One Hundred and Twenty Five Dollars, for which you will please send me a release in the action of Fruiesen vs. Senwald Realty Corp."

To summarize: Fruiesen, the plumber, had a bill against the plaintiff. The defendant agreed to pay part, and the plaintiff agreed to pay $125 of the bill. This transaction was carried out by the plaintiff paying this amount on July 20, 1931. Prior thereto, and on May 25, 1931, the plaintiff had received from the defendant a check for $152.93, and had given a general release wherein it released the defendant from any and all causes of action on claims of whatsoever nature and kind " which it or its successors hereinafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of these presents, and particularly on account of any damage to premises No. 1 Lispenard Street and /or No. 281 West Broadway, Borough of Manhattan, City of New York,

or any damage whatsoever in connection with, on account of, or as a result of the construction of Route 101, Sections 3 and 4 of the Independent System of Municipal Rapid Transit Railroad." This release, as above stated, was signed by Bernard Waldman, secretary and treasurer, Philip Sencer, president.

That there can be no mistake regarding these facts appears from the testimony of Dr. Waldman:

" Q. What became of the $152.93? A. That was deposited in the account of the Senwald Holding Corporation, when Mr. Sencer signed the release on May the 18th, 1931.

" Q. Well, did you ever pay out any of it? A. One-hundred twenty-five dollars.

" Q. Then you did not pay half [of plumber's bill], you only paid the difference between $125 and $152.93? A. Yes, sir."

I, therefore, return to what was stated at the beginning of this opinion: The charge of fraud and want of consideration is not made out. The plaintiff was not deceived into believing that no damage had been done to its building. There was money consideration for the release; that paid at the time the release was given, the cancellation of the forty dollars due the defendant from the plaintiff, to say nothing of the part payment made by the defendant on the plumber's bill. That Stiefel failed to tell Sencer or Waldman that the building had moved a few inches over the sidewalk constitutes no fraud. He was under no duty to inform the plaintiff of all the particulars in which the building was damaged or to make a survey for it. Besides, there is no evidence that Stiefel knew this fact.

For the reasons herein stated the judgment of the Appellate Division and that of the Trial Term should be reversed, and the complaint dismissed, with costs in all courts.

LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur; CROUCH, J., not sitting.

Judgments reversed, etc.